UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HERBERT SITTINGCROW,<br><br>Defendant. | 4:21-CR-40172-KES<br><br><br>**ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE** |

Defendant, Herbert Sittingcrow, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Docket 54. The Federal Public Defender filed a notice of intent not to file supplemental briefing on Sittingcrow's behalf. *See* CMECF Docket Entry between numbers 54 and 56, *United States v. Sittingcrow*, 4:21-CR-40172-1 (D.S.D. 2021). Plaintiff, the United States of America, opposes the motion. Docket 56. For the following reasons, Sittingcrow's motion for compassionate release is denied.

## BACKGROUND

In December 2021, Sittingcrow was charged with two counts of transportation of child pornography. Docket 1. On May 3, 2022, a superseding indictment was filed charging Sittingcrow with two counts of transportation of child pornography and one count of receipt and distribution of child pornography. Docket 22. On April 5, 2023, Sittingcrow entered a plea of guilty to one count of transportation of child pornography. Docket 33 at 2; Docket 38. The plea agreement provided that the remaining charges would be dismissed.

1

Docket 33 at 4. On July 3, 2023, the court sentenced Sittingcrow to 191 months in custody followed by 5 years of supervised release. Docket 47 at 2-3. Sittingcrow's projected release date is June 1, 2035. *See Find an Inmate*, Fed. Bureau of Prisons, (register number 77803-509); last visited June 26, 2026). He is serving his sentence at the Williamsburg Federal Correctional Institution in South Carolina. *Id.*

Sittingcrow filed the current motion using an AO 250 form for a Motion for Sentence Reduction under 18 U.S.C. § 3852(c)(1)(A). Docket 54. On that form, Sittingcrow indicated that he believes there are extraordinary and compelling reasons for his release. *Id.* at 4. Sittingcrow checked the box indicating that "[t]he caregiver of my minor child or children has died or become incapacitated and I am the only available caregiver for my child or children." *Id.* Sittingcrow also checked the box indicating that "[his] spouse or registered partner has become incapacitated and I am the only available caregiver for my spouse or registered partner." *Id.* This appears to have been an error as there is nothing in the remaining documents referencing caring for his spouse or a registered partner. *See generally* Docket 54-1. Therefore, the court only considers Sittingcrow's motion under the exception for the care of a child or children.

## DISCUSSION

Sentences are final judgments, meaning a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). Congress passed The First Step Act (FSA) in 2018, facilitating an exception to

the finality of sentences. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In relevant part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions with the court seeking compassionate release. *Id.* Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). A reduction in sentence must consider the 18 U.S.C. § 3553(a) sentencing factors and be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect the FSA's authorization for federal courts to rule on compassionate release motions initiated by defendants. U.S.S.G § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.*; *2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited June 26, 2026).

## I.     Administrative Exhaustion

Before the FSA's passage, only the Bureau of Prisons (BOP) Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Sittingcrow submitted a request for a compassionate release to the warden of Williamsburg FCI on May 12, 2025. Docket 54 at 3. The warden denied the request on June 6, 2025. Docket 55 at 90. The United States concedes that Sittingcrow has exhausted his administrative remedies. Docket 56 at 4. Thus, the court reviews Sittingcrow's motion on the merits.

## II.    Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission's policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G § 1B1.13(b)(1)-(4), amend. 814. The first four categories pertain to a

defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an unusually long sentence, served at least ten years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to be imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

### A.   Care of a Child Pursuant to U.S.S.G. § 1B1.13(b)(3)(A)

Sittingcrow's argument that he is the sole person available to provide care for his child falls under the "family circumstances of the defendant" portion of U.S.S.G. § 1B1.13(b)(3)(A). Docket 54 at 4. This section provides in relevant part that extraordinary and compelling reasons may be established

due to "the death or incapacitation of the caregiver of the defendant's minor child." *See* U.S.S.G. § 1B1.13(b)(3)(A).

To establish this extraordinary and compelling reason, Sittingcrow must show that the child's current caregiver is either deceased or incapacitated. In the attachment to his motion, he indicates he is requesting compassionate release due to the "situation of my 9-year old minor child [name redacted] whose mother Shannon Petree was recently deceased." Docket 54-1 at 2. Sittingcrow advises that the "State of South Dakota has summoned [him] for Court hearing (Case 13 JUV 25-8) as my 9-year old daughter was neglected or abused" and "[he] plan[s] to be a good father and the sole caregiver for [his] minor child, and not allow [his] conviction to affect my care to her." *Id.*

The United States notes that Sittingcrow attached a "Notice of Entry of Temporary Custody Order" filed in the State of South Dakota, First Judicial Circuit, on April 3, 2025, which indicates in the heading that his daughter's mother is deceased. *Id.* at 11; Docket 56 at 4. Based upon this information, the child's mother died over a year ago and it is likely that Sittingcrow's daughter is under the care of a caregiver. Regardless, Sittingcrow provides no other information to this court about who currently has custody of his biological daughter, and he provides no updates or documentation that indicate his daughter's current custodian has died or is incapacitated. Sittingcrow, therefore, has not shown that the child's current caregiver is either deceased or incapacitated.

6

Even if Sittingcrow had made the necessary first showing, he would next be required to show he is the sole available caregiver for his minor child. *See United States v. Hood*, 2024 WL 3598991, at *2 (D. Neb. July 30, 2024); *United States v. Crow*, 2023 WL 4493500, at *4 (D.S.D. July 12, 2023). Sittingcrow has made no such showing. Sittingcrow has not established that he is the sole available caregiver, and there is no information about whether a member of the child's biological mother's family would be an eligible caregiver. It is also unclear who gained custody of the child upon the death of her mother. Because he has not made the requisite showing, Sittingcrow has failed to satisfy this requirement.

The final question, assuming Sittingcrow had made the other requisite showings, is whether Sittingcrow would be a suitable caregiver for his child. *See United States v. Willis*, No. 22-153 (DWF/JFD), 2024 WL 4452134, at *2 (D. Minn. Oct. 9, 2024) ("even if the foster care placement was somehow deficient, Willis has not shown that he would be a suitable caregiver to [children] or that he would be able to obtain custody upon release."). This court has relied on the BOP program statement found at 5050.50 to offer guidance in this area. *United States v. Merle Seeking Land*, 2024 WL 3887068, at *3-4 (D.S.D. Aug. 21, 2024); *United States v. Watson*, 2024 WL 1093757, at *5 (D.S.D. Mar. 13, 2024). Some of the relevant questions to evaluate the best interest of the child include:

> - Has the inmate committed violent acts before or during the period of incarceration as reflected in the PSR, institutional disciplinary records, or other appropriate documentation?

- Did the inmate have drugs, drug paraphernalia, firearms, or other dangerous substances in the home while caring for the child prior to incarceration?

- To what degree has the inmate had contact with or cared for the child prior to arrest, pretrial or pre-sentence, and during incarceration? - Is there any evidence of child abuse, neglect, or exploitation in the PSR or other documents?

- Are there any documents regarding the inmate's parenting skills or obligations (e.g., child support orders, restraining orders for physical or emotional abuse of spouse, registered partner or children, certificates for classes in anger management or other types of counseling, removal of child from the home for any reasons)?

- Are there records regarding the termination of parental rights or loss of custody of the inmate's (other) child? - Has the inmate engaged in programming (e.g., parenting, anger management) during incarceration that would indicate efforts to improve parenting skills or that would indicate a commitment to caring for the child upon release?

*BOP Program Statement 5050.50* at 8-9, available at https://perma.cc/98YN KRQX (updated Jan. 17, 2019; last visited June 26, 2026).

Regarding the first factor, Sittingcrow is a registered sex offender after he pleaded guilty to sexual contact with a child under 16, Docket 44 ¶ 39, and he has been convicted of domestic violence, *Id.* ¶¶ 45, 50, 52, 54. The second factor is whether Sittingcrow had drugs, drug paraphernalia, or firearms while caring for his child before this current incarceration. There is no information provided indicating Sittingcrow ever actively cared for his daughter, but he has had charges related to drug possession. *Id.* ¶¶ 55, 58. The third factor is Sittingcrow's current relationship with his child and history of care. According to the Final Presentence Report, Sittingcrow has not been active in his daughter's life since she was approximately two years old. *Id.* ¶ 80. It is

8

unknown if Sittingcrow ever resided with his child. The final factor concerns Sittingcrow's parenting skills and any relevant programming. Sittingcrow does not identify any classes, programming, or obligations relevant to this consideration.

In his attachment in support of his motion, Sittingcrow does attach a document from his appeal of the warden's denial wherein he claims the warden "erred in denying my compassionate release (Sentence Reduction) Petition as I am attaching a copy of the Court Records that support my request and as I am the sole available caregiver for my daughter who is a minor." Docket 54-1 at 10. The attachment also includes a response by the Unit Manager, indicating that Sittingcrow "provided a copy of a court order from the State of South Dakota, Clay County, First Judicial Circuit, case number 13JUV25-8[,]" and that based on the language of that order, Sittingcrow did not show that Sittingcrow is the sole caregiver of the minor child. *Id.* at 9. Notably, the order states that "returning the child to the Respondent Father would likely result in serious emotional and/or physical damage to the minor child." *Id.* The state court's order supports that Sittingcrow would not be a suitable caregiver for his minor child. The order further shows that returning Sittingcrow's minor daughter to him is not in the best interest of the child.

Based on all the reasons set forth above, Sittingcrow's motion for release to care for his child fails to meet the legal requirements for extraordinary and compelling reasons.

### III.    Sentencing Factors of § 3553(a)

The § 3553(a) sentencing factors confirm that compassionate release is not warranted in this case. The first factor the court considers under this section is "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). Sittingcrow's instant offense is transportation of child pornography. Docket 33; Docket 38. He possessed over 200 images and 91 video files of child pornography. Docket 44 ¶ 25. These materials included minors under 12 years of age and sadistic or masochistic conduct. *Id.* ¶¶ 22-23. He has a criminal history replete with violence, including sexual assault and domestic assault. *Id.* ¶¶ 39, 45, 50, 52, 54. His non-violent criminal history includes failure to register as a sex offender, drug possession, theft, trespassing, and failing to appear. *Id.* ¶¶ 36-59. This type of criminal history does not indicate someone who has learned from their mistakes or someone who is willing to change his criminal behaviors.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). With a total offense level of 32 and a criminal history category of VI, Sittingcrow's advisory Guideline range was 210-262 months in custody. Docket 44 ¶ 103. This court varied downward two levels based on a policy disagreement with U.S.S.G. § 2G2.2(b)(6). Docket 47-1 at 3. This adjustment made Sittingcrow's advisory Guideline range 180-210 months in custody. *Id.* Based on Sittingcrow's prior

sex offense, this court determined a sentence at the top of this range, 210 months in custody, was appropriate. *Id.* The court then gave Sittingcrow credit for the 19 months he sat in state custody on a parole revocation for the same conduct as the instant offenses resulting in a custody sentence of 191 months. Docket 47-1 at 5. Allowing Sittingcrow to serve just 28% of his sentence would not reflect the seriousness of the offense, it would not promote respect for the law, and it would not provide just punishment.

The remaining § 3553(a) factors also do not support a sentence reduction. If the court were to grant compassionate release, similar conduct by others would not be deterred because Sittingcrow's punishment would not be severe enough to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B). Because Sittingcrow committed a serious crime and has a history of violence, reducing his sentence would not protect his daughter or the public from further crimes committed by him. *See* 18 U.S.C. § 3553(a)(2)(C). After careful consideration, the court concludes that Sittingcrow's sentence continues to be appropriate for the seriousness of the crime he committed.

## CONCLUSION

Sittingcrow has failed to satisfy the extraordinary and compelling reason standard for compassionate release. Thus, it is

ORDERED that Sittingcrow's motion for compassionate release (Docket 54) is denied.

Dated July 31, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE